## STATEMENT OF FACTS

Between June 25, and June 26, 2014, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, Detective Palchak ("UC") and members of the Task Force posted an advertisement on the website Craigslist. The advertisement was posted in the "casual encounters" section of the classifieds and used language to attract individuals with a sexual interest in children.

On or about June 25, 2014, at approximately 9:23 a.m., an individual later, identified as the defendant Michael Daryn Carter ("defendant"), responded to the craigslist advertisement by e-mail and wrote, "Are you an actual family man? I am very interested in meeting and or talking with someone who has been and currently is a perv. Lets talk and see where we can come together." The UC responded, "Hi Yes actual family man here, you have any lil ones?" The defendant, whose email address shows up as "james carter (jmdcarter47@gmail.com)," responded, "I wish I did. But my experience is limited to my dreams. I have dreams and fantasies but, that's all. Hopefully someday I will find a family for fun. Is the experience, as good as the fantasy? My favorite is pre-pubescent girls but, I have fantasized about a lot more." The UC responded, "yes it is, my daughter is 9, we don't fuck but do everything else." The defendant then wrote, "Wow. I would give almost anything, go anywhere for that type of experience. You are a very lucky man. Why do you not fuck?" The UC explained that he does not want to hurt the child but that he is "close," to which the defendant responded, "Either she is real small, or you are real big. But WTF do I know. I've watched a few videos where the penetration is full. One full length movie detailed the slow process. It was very erotic . . . If you ever decide to invite another man, let me know I would drive to D.C. in a second. It would be worth it." The defendant wrote that he lived "in the mountains of North Carolina."

The UC responded that he lives alone and that the defendant would be more than welcome to come stay at his place. The UC and the defendant then discussed a plan for the defendant to travel to D.C. in the early morning hours of June 26, 2014, for purposes of having sex with the purported 9 year-old child. On June 25, 2014, at approximately 1:29 p.m., the defendant wrote, "well my friend. Hopefully I will see you tomorrow," and the UC responded, "yes, for sure, do you have a cell for texting, I can also send you my address for GPS . . . let me know if your serious, if so I will make this work. When would you leave? How far of a drive is it," to which the defendant responded, "I'm definitely serious, if you are. I will admit, I'm a little apprehensive. As you said earlier, the risk is great. But, I will give it a go. It's an 8 hour drive for me to DC. I will probably leave around 2 am. I just hope that you are serious also." The UC responded, "I am totally serious and real, really looking forward to this. I will have some limits with her though, basically everything is in play except for full fucking. Is that ok? What are you looking to do with her?" The defendant wrote, "I will respect any limits you put down. You call the shots. And I am into anything. I do not know what to say as far as what I want. She is a lot smaller than what I am used to so the normal things are off limits. I guess the only things available are oral and masturbation, is there anything else?"

1

The defendant and the UC continued to discuss the logistics for and the meeting with the child, via email, Skype and text message.

The UC provided the defendant with his purported address in Washington, D.C. At 4:42 p.m. the defendant wrote, "Your offer is scary as hell. I am so undecided. I want to, very badly, but, I am seriously questioning whether or not you are real. What if you are Law Enforcement. What if you are trying to set me up." The UC responded, "I am not a trap or cop," and continued to explain that he would try to take a photo of the child and send it to the defendant to validate. The UC concluded, "If you are not interested or if she is to young for your taste just let me know." The defendant responded, via Skype, "Dude, I am so interested you just don't know. But I am sure you understand the apprehension . . . I am coming no damn doubt . . . just excited and scared all at once."

On June 25, 2014, at approximately, 5:03 p.m., the defendant and the UC exchanged cell phone numbers and began to text message. During the course of their text messaging session, the defendant asked the child's name and discussed child pornography. Specifically, the defendant wrote, "If it was me. I would have some explicit photos [of your daughter] somewhere for my pleasure??" The UC responded, "Yeah, I get to nervous keeping them." The defendant then wrote, "I want to ask more questions. And remember my questions are based on movies and ignorance so be patient . . . have you ever tried anal probes. I saw a movie that detailed anal sex with an 11 yr old girl. They said it was better then reg sex because the anis expands easier . . . also in the movies it said that girls as young as 6 could enjoy intercourse. Do she enjoy, I mean really enjoy the fondling and the oral . . . you are a lot more patient than I would be. I would most definitely already have been in full penetration. Or at least half."

Law enforcement officers identified the defendant through the phone number provided by the defendant to the UC for purposes of text messaging. The defendant was further identified through law enforcement and public databases as Michael Daryn Carter of Lenoir, North Carolina.

On June 26, 2014, at approximately 12:30 p.m., after extensive text messaging about the meeting location, the defendant met the UC at the agreed upon location in Washington, D.C. The defendant and the UC made eye contact and the defendant identified himself to the UC as Mike. Upon his arrest, defendant was in possession of a North Carolina driver's license with the name Michael Carter.

After his arrest, the defendant waived his rights and provided a statement to law enforcement. The defendant acknowledged corresponding with the UC and travelling from North Carolina to the District of Columbia. When asked why he travelled to D.C., the defendant repeated multiple times that he "just had to see if it was real." The defendant further stated that he could not say whether or not he would have had sex with the child if the opportunity presented itself, but that he travelled to D.C. for that purpose.

_____
DETECTIVE TIMOTHY PALCHAK
METROPOLITAN POLICE DEPARTMENT

Sworn and subscribed to before me this _____ day of June, 2013.

_____
United States Magistrate Judge